Filed 7/27/26  Volort v. Yepremian CA2/1

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION ONE

| | |
|---|---|
| VOLORT, LLC, | B349476 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. 25NNCV00278) |
| v. | |
| ROBERT YEPREMIAN, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Ashfaq G. Chowdhury, Judge.  Affirmed.

Law Offices of Raymond Hovsepian and Raymond Hovsepian for Defendant and Appellant.

The Salem Law Firm and Edmond E. Salem for Plaintiff and Respondent.

_____

In the proceedings below, respondent Volort, LLC filed an unlawful detainer complaint against appellant Robert Yepremian, contending Yepremian failed to vacate a commercial storefront he was leasing from Volort despite his fix-termed lease (the Lease) ending on July 16, 2022. The trial court entered judgment in Volort's favor.

On appeal, Yepremian contends the court erred because, after the Lease expired, Volort purportedly accepted rent for the period of July 17, 2022 to August 16, 2022—thereby converting his tenancy into a month-to-month tenancy—and Volort failed to plead that it had served Yepremian with the notice required to terminate a month-to-month tenancy. We find substantial evidence supports the court's finding that a month-to-month tenancy was never created, and thus it is irrelevant whether Volort pleaded that it gave the notice required to terminate a month-to-month tenancy. We therefore affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

### A. *The Lease Agreement*

In July 2017, Hong Soo Kim and Yepremian entered a five-year lease agreement regarding "a commercial store space" in La Crescenta (the Premises). The Lease began on July 17, 2017, and ended on July 16, 2022. Rent was set at $2,200 per month for the first year and would increase approximately 2 percent every year, with the monthly rental rate at $2,382 for the fifth year of the Lease. After the first five years, Yepremian had the option to extend the lease for another five years, so long as he "is not in default of any of the terms, conditions, and covenants of this Lease."

2

The Lease provided rental payments were due "in advance on the fifteenth (15th) day of each and every month of the lease term." "Failure to pay rent when due" constituted a default of the lease. "If TENANT holds over after said term with the consent of the LANDLORD expressed or implied, such tenancy shall be from month to month only and not a renewal hereof, and TENANT agrees to pay rent at the prevailing rate for such additional period it may hold over and also to comply with all terms, conditions, and covenants of this Lease for the time it hold[s] over."

In October 2017, in an "Assignment and Assumption of Lease Agreement," an "Assignor" defined as "The Hong Soo Kim and Kwang Ja Kim Family Trust of 2013, by and through its Successor Trustee, Hae Yung Kim and Hong So Kim Trust" assigned "all of his rights, title and interest in and to the Lease" to Shin Ho Kim (Kim) and Gena Soon Yoon (Yoon). The assignment agreement also recited the Assignor had "transferred his interest" in the Premises to Kim and Yoon.

### B. *The First Unlawful Detainer Action*

On May 12, 2022, Yepremian was sent a "60-Day Notice of Termination of Tenancy," dated May 13, 2022, which informed him that "the tenancy by which you hold possession of the premises is terminated on July 16, 2022, at which time you are required to vacate and surrender possession of the premises" and that he did "not qualify under paragraph 28, Option to Extend, to extend the lease for an additional 5-years because since 2017 you have been in default of various terms, conditions, and covenants under the Lease."

On February 2, 2023, a "Commercial Notice to Pay Rent or Quit (Revised)" was left with "Michael 'Doe' – Employee" at the

3

Premises. The notice stated that there was unpaid rent in the amount of $41,862.

In March 2023, Kim and Yoon filed a form unlawful detainer complaint against Yepremian. The complaint alleged that Kim and Yoon were the owners of the Premises and, on July 17, 2017, Yepremian entered a written lease agreement with "plaintiff's predecessor in interest." It further alleged Yepremian was served with a 3-day notice to pay rent or quit on February 2, 2023, and Yepremian failed to vacate by the expiration date of February 7, 2023.

According to a December 2024 minute order dismissing this action, the unlawful detainer complaint proceeded to a bench trial in May 2024, with additional testimony heard in November 2024. The minute order contained excerpts of testimony from the trial in which Kim testified that, when the complaint was filed, neither he nor Yoon were the owners of the Premises—the owner was the "LLC."[1] The court noted Kim's testimony was "the first time counsel for the parties learned that the individual plaintiffs were not the owners of the property."

The order states: "The primary and threshold question raised, in the Court's view, is whether the individual plaintiffs, Shin Ho Kim and Gena Soon Yoon, should be allowed to amend the complaint to name Volort LLC, an entity they formed, and the actual owner of the property at issue . . . at the time of the filing of the complaint, as the plaintiff."

The court noted that if it were to permit amendment, "the case would be, in the Court's view, relatively simple: the evidence

---

[1] The court's order clarified the "LLC" referred to Volort and stated the only members of Volort were Kim and Yoon. Yoon is Kim's wife.

4

established, in the Court's view, that the defendant failed to pay rent at various points during the lease, during and before the Covid moratoria, that he had never paid back the back rent owed, and that, under the lease, the landlord was under no obligation to renew a lease term if there had been failures to pay rent." The court, however, ultimately refused to permit the amendment, finding the "timeline" to be "simply egregious . . . in terms of the plaintiffs' failure to advise their lawyer that Volort LLC was in fact the actual, legal owner of the property in question." The court dismissed the complaint, finding Kim and Yoon lacked standing.

### C. *The Second Unlawful Detainer Action[2]*

#### 1. The Initial Complaint

In January 2025, Volort, Kim, and Yoon filed a form unlawful detainer complaint against Yepremian, alleging Yepremian entered a written lease agreement with "Plaintiffs' Predecessor in interest," in which he agreed to rent the Premises "as a . . . Term Lease." The complaint notes the Lease was later changed by an "Assignment and Assumption of Lease Agreement from Plaintiffs' Predecessor in interest." A copy of the Lease— but not the assignment agreement—is attached to the complaint.

One line of the form complaint states "Plaintiff is" and contains various boxes the complainant can check—the boxes for

_____

[2] In a trial brief in the second unlawful detainer action, Volort stated there was yet another unlawful detainer action against Yepremian in November 2022, which was "voluntarily dismissed by then Plaintiffs, Shin Ho Kim and Gena Soon Yoon, husband and wife," but contended this action "has no relevance to the instant action."

"an individual over the age of 18 years" and "a corporation" were checked. The complaint also states: "Plaintiff's interest in the premises is . . . as owner."

The complaint alleges Yepremian was personally served on May 12, 2022, with a "60-Day Notice of Termination of Tenancy" and failed to vacate the premises by July 16, 2022. Attached to the complaint was the May 2022 notice described above. The complaint also states: "Plaintiff demands possession from each defendant because of expiration of a fixed-term lease." Kim verified the complaint as a member of Volort.

In February 2025, Yepremian demurred to the complaint, arguing that, for plaintiffs Kim and Yoon, the complaint failed to allege facts sufficient to state a cause of action. He also contended the complaint was uncertain because: (1) it was unclear which plaintiff was a corporation as he did not know "how an entity with the letters 'LLC' in its name can be a corporation if that refers to Plaintiff, Volort, LLC"; (2) it was unclear whether the action was based on the expiration of a fixed term lease or on the service of a 60-day notice to quit; and (3) the 60-day notice to quit was dated May 13, 2022, but was purportedly personally served on May 12, 2022.

Yepremian additionally moved to strike the entire complaint as to Kim and Yoon, as well as the allegation that one of the plaintiffs was a corporation. Yepremian argued Kim and Yoon lacked standing to prosecute an unlawful detainer (asking the court to judicially notice the complaint and ruling from the first unlawful detainer action), and also that the verification signed by a member of Volort made clear that the entity "is not a corporation."

### 2. The Amended Complaint

On February 27, 2025, Volort—as sole plaintiff—filed an amended form unlawful detainer complaint against Yepremian. The amended complaint states Volort is a limited liability company and the owner of the Premises. The amended complaint alleges Yepremian entered a written lease agreement with "plaintiff's predecessor in interest," in which he agreed to rent the Premises "as a . . . Fixed term lease agreement." The amended complaint again notes the Lease was later changed by an "Assignment and Assumption of Lease Agreement from Plaintiffs' Predecessor in interest," and this time attached a copy of both the Lease and the assignment agreement. The amended complaint contained no allegations about how Yepremian was served any notices and again "demands possession from each defendant because of expiration of a fixed-term lease." Kim again verified the amended complaint as a member of Volort.

On March 18, 2025, Yepremian filed a verified answer to the amended complaint. As his fourth affirmative defense, Yepremian alleged: "By their conduct and words, Plaintiffs, and each of them, waived the right to assert that Defendant's tenancy was terminated, including, by accepting rent." As his fifth affirmative defense, Yepremian alleged: "By reason of Plaintiff having accepted rent, and Defendant's detrimental reliance thereon, Plaintiff is estopped to assert that Defendant's right to possession was terminated."

### 3. Trial

Before trial commenced, the parties and the court discussed whether there would be a need to repeat evidence presented at the trial in the first unlawful detainer action. Yepremian "stipulate[d] to the allegations contained in the first amended

7

complaint," and the parties agreed that the court could review previous trial testimony about "the relationship [between the parties], the timing, and the amounts owed."

Kim and Yepremian were the only witnesses to testify at the new trial. Kim testified that, in December 2024, after the dismissal of the first unlawful detainer action, he and Yoon assigned the Lease to Volort. He also testified Yepremian was still occupying the Premises.

On cross-examination, Kim was shown Exhibit 42.[3] The exhibit is a one-page spreadsheet entitled "2022 and 2023 Charges and Payment Details" with five columns: Date, Balance Due, New Charges, Amount Paid, and Comments. As relevant to this appeal:

In the row with a "Date" of "4/14/2022," the column headed "Amount Paid" has an entry for "2,382," and the column headed "Comments" states "April Rent 2022 – (* Apr rent was on time)."

In the row with a "Date" of "4/15/2022," the column headed "New Charges" has an entry of "2,382," and the column headed "Comments" states "Rent Due – Apr 2022."

In the row with a "Date" of "7/15/2022," the column headed "New Charges" has an entry for "2,382," and the column headed "Comments" states "Rent Due – July 2022."

In the row with a date of "7/25/2022," the column headed "Amount Paid" has an entry for "2,382," and the column headed "Comments" states "July Rent 2022 – (* July rent was 10 days late)."

---

[3] While this exhibit is not in the appellate record, Yepremian contends it is a copy of a "rent ledger" attached to his trial brief, which *is* in the appellate record. Volort does not dispute this.

When asked about the July entries, Kim testified that the entry for July 15, 2022, reflected rent due for the period between June 16 to July 15, 2022. When asked about the language of the Lease stating rent was to be paid "in advance," Kim stated he understood that term to mean Yepremian was "supposed to pay me before the 15th of the month" for "the days that he's used the property."

Yepremian's counsel questioned Kim about Exhibit 57, a printout showing a check numbered 749, dated April 12, 2022, and made out to Shin Ho Kim for $2,382. In the upper lefthand corner of this printout was "07/25/2022." When asked whether the check shown in the exhibit was cashed on July 25, 2022, Kim denied it, asking rhetorically, after Yepremian's counsel pointed out the check was dated "4-12": "Yeah. So why would you pay the July rent in April?" Regarding the July 25 date on the printout, Kim testified: "That might be the print date because I have in my notes that the April rent was paid on time. So if you look on Exhibit 42, it says, April rent 2022, 4-14. So I believe that's the print date of that document, not the cash date." Kim subsequently agreed that he "receive[d] some payment of some form that [he] cashed or deposited on July 25, 2022."

On redirect, Kim explained he called the rent paid on July 25, 2022 " 'July rent' because the rent [term] ends in July." Kim testified Yepremian sent him "a couple of checks" after the Lease expired, but Kim returned them.

Yepremian testified that if he were making a rent payment on July 15, 2022, "that would cover July 16th through August 15th." He also testified he received no refund of the payment he made on July 25, 2022.

9

Kim was then recalled as a direct witness for Yepremian and questioned about a May 19, 2022 three-day notice served on Yepremian that listed unpaid rent of $2,382 for May 15 through June 14, 2022, and $986 from January to May 2022, for a total of $3,368. Kim acknowledged he received payment of $3,368 on May 23, 2022, and on the "rent ledger" in Exhibit 42, there was an entry for "5/23/2022" that stated "2,382" for "Amount Paid" and "May Rent 2022 – (* May rent was 8 days late)" in "Comments." Kim testified there may have been an "oversight" regarding the three-day notice, maintaining he collected rent as he previously testified (i.e., for the month that had passed). On questioning from his own counsel, Kim testified he thought "the date was wrong on the three-day notice" and that "it should have said through May 15th" because, according to the ledger, "the date was for the April 16th through May 15th, not May 16th, through June 14th [*sic*]."

No other witnesses testified. The court took the matter under submission after brief arguments from counsel.

### 4.    Statement of Decision

In July 2025, the court issued a "tentative statement of decision." The court found Yepremian "was in breach of the lease prior to its expiration and that he never cured those breaches" as he "had, prior to the termination of the original 5-year term, violated the lease by paying late, and being behind on rent" and "never cured his defaults." As for the printout of the check shown to Kim at trial, the court found that "it is clear from the April date on the check that the rent was being accepted for April 2022 rent, not for a new term." The court added that "even if the holdover was triggered by acceptance of rent, the extension was only for one month, and no longer, and the lease was over in

10

2022, at the latest one month after the last check from defendant was cashed—so August of 2022." The court found Yepremian had "no plausible argument for remaining in the property for three years after rent was last accepted." The court concluded that "[t]his lease is over" and ordered "[h]oldover damages . . . to be calculated as beginning on August 17, 2022."

Yepremian objected to the tentative statement of decision, arguing the court erred both legally and factually. In August 2025, the court overruled Yepremian's objections and held that its "tentative statement of decision will stand[,] and judgment will be entered for plaintiff." In September 2025, the court entered judgment in favor of Volort, ruling that Volort was entitled to possession of the Premises, that the lease was forfeited, and that Yepremian was liable for holdover damages of $85,752. Yepremian timely appealed.

## DISCUSSION

In its minute order stating that "judgment will be entered for the plaintiff," the court adopted its July 2025 tentative statement of decision. In that statement of decision, the court did not expressly find whether Volort had accepted a rent payment for a rental period after the Lease expired. But the court did say that: (a) "in *Baca* [*v. Kuang* (2025) 107 Cal.App.5th 1292], unlike this case, plaintiff continued to accept payments from the tenant for three months after she filed the action"; and (b) "it is clear from the April date on the check [presumably displayed in Exhibit 57] that the rent was being accepted for April 2022 rent, not for a new term." From these statements, we conclude the court rejected the contention that Volort created a month-to-month tenancy by accepting rent after the Lease ended. (See *Kaushansky v. Stonecroft Attorneys, APC* (2025) 109 Cal.App.5th

11

788, 799 [" 'A judgment or order of a lower court is presumed to be correct on appeal, and all intendments and presumptions are indulged in favor of its correctness' "].)

Although the court also stated that "even if the holdover was triggered by acceptance of rent, the extension was only for one month, and no longer, and the lease was over in 2022, at the latest one month after the last check from defendant was cashed—so August of 2022," we cannot read this as a finding that such an acceptance occurred. The court was addressing how an alternative scenario would have played out had the necessary condition—acceptance of rent for a period after the Lease expired—existed, not finding that the condition did exist.

Yepremian contends Volort "accepted a payment made after expiration of the lease term for a rental period that was also after expiration of the lease term" and "[n]o substantial evidence supports a different finding or conclusion." We disagree. "When a 'statement of decision contains both findings of fact and conclusions of law,' '[w]e review the trial court's findings of fact to determine whether they are supported by substantial evidence.' " (*Baca v. Kuang* (2025) 107 Cal.App.5th 1292, 1297.) "The testimony of a single witness may constitute substantial evidence." (*Duchrow v. Forrest* (2013) 215 Cal.App.4th 1359, 1376.) "[A]ppellate courts recognize they must accept a trier of fact's express or implied findings that some or all of a witness's testimony is credible unless the testimony is incredible on its face, inherently improbable, or wholly unacceptable to reasonable minds." (*TRC Operating Co., Inc. v. Chevron USA, Inc.* (2024) 102 Cal.App.5th 1040, 1106.)

At trial, Kim testified that when he noted "July rent" in the rent ledger, that reflected rent due for the period between June

12

16, 2022, to July 15, 2022. When asked about the language of the Lease stating rent was to be paid "in advance," Kim stated he understood that term to mean Yepremian was "supposed to pay me before the 15th of the month" for "the days that he's used the property." He further testified that he believed the April 2022 check represented in Exhibit 57 was deposited in April, because the rent ledger showed that April rent was received on time.

Kim's testimony regarding his manner of collecting and calculating rent is not incredible on its face, inherently improbable, or wholly unacceptable to reasonable minds.[4] Thus, his testimony constitutes substantial evidence to support the court's finding that Volort did not accept rent for a period after the Lease expired. While evidence in the record may also support a contrary conclusion, " '[w]hen a trial court's factual determination is attacked on the ground that there is no substantial evidence to sustain it, the power of an appellate court *begins* and *ends* with the determination as to whether, *on the entire record*, there is substantial evidence, contradicted or uncontradicted, which will support the determination, and when two or more inferences can reasonably be deduced from the facts,

---

[4] We also note that, according to the ledger, over $40,000 in back rent was owing at the time the July 25, 2022 payment of $2,382 was made, and while the comment for that entry states "July Rent 2022 – (* July rent was 10 days late)," the amount also served to reduce the "Balance Due" by that same amount. In other words, even were rent payments collected in advance of the rental month instead of at the end of the rental month, the court could have reasonably assumed the July 25 payment Kim testified he cashed or deposited went to reducing the previously unpaid rent and not to pay for any rental period after the end of the Lease.

13

a reviewing court is without power to substitute its deductions for those of the trial court. *If such substantial evidence be found, it is of no consequence that the trial court believing other evidence, or drawing other reasonable inferences, might have reached a contrary conclusion.'"* (*Jameson v. Five Feet Restaurant, Inc.* (2003) 107 Cal.App.4th 138, 143.)

Because the trial court concluded no month-to-month tenancy was created, we need not address Yepremian's remaining arguments.

## DISPOSITION

The judgment is affirmed. Respondent shall recover its costs on appeal.

NOT TO BE PUBLISHED

M. KIM, J.

We concur:

ROTHSCHILD, P. J.

WEINGART, J.

14